IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

*******

UNITED STATES OF AMERICA,                    CR 06-51-BLG-CCL
                                             CV 10-46-BLG-CCL

       Plaintiff,

                                                  <u>ORDER</u>

-v-

FREDERIC SCOTT,

       Defendant.

*******

Before the court is Defendant Frederic Scott's Motion Pursuant to 28 U.S.C.

§ 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody

(Document 85). Defendant Scott is a federal prisoner proceeding *pro se*. The

United States has filed a Response opposing Defendant's § 2255 Motion.

**BACKGROUND:**

Defendant Scott was convicted by jury trial on April 18, 2007, of one count charging him with Carry or Use of a Firearm During and in Relation to a Drug Trafficking Crime (Count I) and one count charging him with Distributing Cocaine or Aiding and Abetting the Distribution of Cocaine (Count II).  The Court sentenced Defendant Scott on September 20, 2007, to 60 months incarceration as to Count I, to be served consecutively to 24 months incarceration as to Count II, for an aggregate term of 84 months incarceration, followed by 36 months of supervised release on each count, to be served concurrently.  Defendant's Offense Level was 28, his Criminal History Category was II, and his Guideline Range was 84-90 months.  A mandatory minimum sentence of 60 months incarceration applied to Count I.  *See* 18 U.S.C. §924(c).  Defendant was at the time of sentencing a 50 year old man with five pages of criminal history covering a thirty-year time period.

Defendant appealed his conviction and sentence to the Court of Appeals for the Ninth Circuit.  A Circuit panel affirmed the judgment of conviction, *see United*

*States v. Scott*, 2009 WL 226205 (9th Cir. 2009), and issued its mandate on

February 25, 2009.  Defendant Scott filed this, his first, section 2255 Motion

within the one-year limitations period on April 30, 2010.  *See Clay v. United*

*States*, 537 U.S. 522, 527, 528-32 (2003) (holding one-year time limitation for

filing began when time for filing a petition for certiorari expires, ordinarily 69

days after mandate).

**SECTION 2255 CLAIMS:**

Ground One:        "Ineffective assistance of counsel during pre-trial stages of
                   proceedings."

Defendant claims that his trial counsel misinformed him regarding what

constituted a firearm for purposes of a charge of violation of 18 U.S.C. § 924(c)

and misinformed him regarding the likelihood of success at a jury trial on his

defense.  Defendant claims that his defense at trial was that the particular rifle

alleged was not a firearm within the meaning of section 924.  Defendant further

claims such misinformation caused him to reject the government's plea bargain,

which would have led, according to Defendant, to the dismissal of the firearm offense (Count I), thereby allowing Defendant to seek a total sentence of 24 months on the drug charge.  Somewhat inconsistently, Defendant argues that defense counsel's misinformation "caused [Defendant] to cease his consideration of trying to plead guilty to the charges without a plea offer from the government." (Doc. 85 at 15.)  Defendant fails to state whether he was or was not offered a plea bargain by the government (although the government states that it has no record in its file indicating that it ever offered a plea bargain to this Defendant).  Defendant concludes with the assertion that but for defense counsel's misinformation, Defendant would have pled guilty to the charges (with or without a plea bargain). Defendant points out that had he pled guilty and received a 2 or 3 level reduction for acceptance of responsibility, he would have been sentenced to a lesser sentence than he is currently serving.

As to Ground One, Defendant fails to assert anything more than bald, conclusory allegations unsupported by corroborating evidence.  Nevertheless, the Court has scrutinized the record for any support it might yield to Defendant's

position.  The Court begins by reviewing Defendant's history of representation.

Defendant was represented at his arraignment on June 30, 2006, by Robert L. Kelleher, Jr., who moved to withdraw two weeks later on July 18, 2006, citing a conflict of interest.  The Court granted that motion on July 19, 2006, and instructed the Federal Defenders of Montana to choose new defense counsel for Defendant.  Steven C. Babcock was thereupon added as defense counsel, but he filed a Motion to Withdraw on July 19, 2006, stating that defense counsel Andrew Nelson had agreed to represent the Defendant.  Nelson was so added, but he filed a Motion to Withdraw as Attorney on August 3, 2006, citing a conflict of interest. That motion was granted, and the Court appointed Jason Holden on August 7, 2006.  Holden sought and received a trial continuance until November 6, 2006, and Holden sought and received court funds to hire an investigator.

After the government added a felon-in-possession charge (Count III) in a Superseding Indictment, Holden sought and obtained several trial continuances. Defendant, who was released from custody pending trial, waived his right to speedy trial.  (The Court notes particularly that Defendant Scott was not taken into

custody on these charges in the District of Montana until after his jury conviction.) The government moved to dismiss Count III, which was granted. Defendant moved in limine to prohibit the government from referring to Defendant as a convicted felon, and the government responded that it had no intention of doing so because the Defendant was not in fact a convicted felon. The motion in limine was therefore denied as moot.

The jury trial came on before the undersigned on April 16, 2007. After three days of testimony from government witnesses, the jury convicted Defendant of Count I (use of a firearm in relation to a drug trafficking crime) and Count II (aiding and abetting distribution of cocaine). The testimony and evidence at trial showed that the firearm in question was a MAADI Rifle, Model ARM, Semi-Automatic 7.62x39 caliber, Serial #AC0058897.[1] It had a Tasco scope and a large

---

[1]   This firearm is also referred to in the testimony of pawnshop owner Ted Elliott as a MAC90 rifle with Tasco Scope, 100 round drum, in a black case. This firearm is also variously described by its eventual purchaser, Mr. Bjerke, as an AK47 and an Egyptian MAADI. Mr. Bjerke testified that after he brought the MAADI rifle home from the pawnshop, he test-fired it by shooting approximately 300 rounds of ammunition.

black drum which held 100 rounds of ammunition.  It was in a hard black carrying

case.  The firearm was lacking a bolt, which, according to testimony, is the part of

a gun that slams a round into the chamber and causes the firing pin to fire.

Defendant's firearm found its way into a pawnshop and from there into the hands

of a purchaser who took a bolt from another of his firearms to make the MAADI

rifle operational.  The Court received testimony that the missing bolt was a $25

part that would be easily obtained and easily inserted into the firearm to make it

operational.  According to the testimony of Steve Berg, Defendant's cocaine

supplier, Defendant Scott traded the firearm for cocaine.  According to the

testimony, Defendant's firearm was worth approximately $1200-$1600.  Steve

Berg sold the MAADI rifle to a pawn shop for $275 cash, and the pawn shop

resold the firearm for $325 (without either the scope or the drum).

　　　　ATF Special Agent James Huskey testified that the firearm pawned by Steve

Berg and purchased by Mr. Bjerke was a firearm within the definition of federal

law.[2]  This expert opinion was properly offered and did not violate any rule of federal evidence, according to the reviewing 9th Circuit panel.  *See United States v. Scott*, 2009 WL 226205, *2 (9th Cir. 2009) ("An expert witness generally may offer an opinion on an ultimate issue to be decided by the jury, provided he does not opine directly on the ultimate issue of the defendant's mental state.").

Leslie Caldwell, Defendant's sister, also testified that Defendant traded a firearm for cocaine from Steve Berg.  Ms. Caldwell testified that she was present in the house when the transaction occurred.

In his opening statement, defense counsel asserted that Steve Berg was not telling the truth and was, in fact, lying about Defendant trading a firearm for cocaine.  Defense counsel asserted that Steve Berg made up the story in order to gain the government's favor and thereby obtain a reduction in his own sentence. Defense counsel also claimed that Leslie Caldwell was also lying when she

_____

[2]  "The term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon. . . ."  18 U.S.C. § 923(a)(3).

claimed that Defendant Scott traded a firearm for cocaine from Steve Berg.

Defense counsel urged the jury not to believe the testimony of Steve Berg and

Leslie Caldwell, both of whom had told law enforcement slightly different

variations of this story in the past, and neither of whom were reliable witnesses.

Defense counsel never told the jury that the MAADI rifle was not a gun under the

statute charged.  This was not the defense presented to the jury.  Rather, the

defense was that the two eyewitnesses to the firearm-for-cocaine barter were lying.

     To prevail on an ineffective assistance of counsel claim, Defendant must

show that (1) his trial counsel's performance fell below an objective standard of

reasonableness, and (2) there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.

*Strickland v. Washington*, 466 U.S. 668, 688 (1984).  To prove the first prong,

Defendant must show that "counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

*Ainsworth v. Woodford*, 268 F.3d 868, 873 (9th Cir. 2001) (*quoting Strickland*, 466

U.S. at 687).  To be deficient, counsel's performance at trial must be objectively

9

unreasonable; it must be "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 688.  Scrutiny of defense counsel's performance is highly deferential, and we "must make every effort 'to eliminate the distorting effects of hindsight.'" *Id.* (*quoting Strickland*, 466 U.S. at 689*).*  We begin with the presumption that counsel's action might be considered sound trial strategy.  Under the prejudice prong, "[a] reasonable probability is one 'sufficient to undermine confidence in the outcome,' but is 'less than the preponderance more-likely-than-not standard.'" *Lambright v. Schriro*, 490 F.3d 1103, 1121 (9th Cir. 2007) (*quoting Summerlin v. Schriro*, 427 F.3d 623, 640 (9th Cir. 2005)).

Viewed within this framework, the Court deems the Ground One claim of ineffective assistance of counsel to be without merit.  Defendant decided to go to trial.  Now, with hindsight, Defendant regrets this course of action and blames his defense counsel.  However, the errors that Defendant attributes to his counsel were not his counsel's errors.  Defendant Scott's theory that if only his attorney would have told him that this AK47 was really a gun he (Scott) would have pleaded guilty is a general allegation unsupported by any corroborating evidence, and it is

10

simply absurd.  The record belies this bald claim.

Indeed, there is contradictory evidence in the record.  In the Court file is defense counsel's *ex parte* motion and memorandum (Doc. 74-75) seeking a Court order declaring the case extended or complex for purposes of CJA reimbursement. The motion is dated November 19, 2007, and it was filed on that date.  The motion explains why the case was extended:

> This case began when Mr. Scott's previous counsel was discharged due to a conflict of interest.  Mr. Scott was charged via Indictment with two (2) counts carrying a mandatory minimum five (5) years.  After undersigned counsel made it clear that *Mr. Scott was going to go to trial*, the Government filed a Superseding Indictment alleging that Mr. Scott was a felon in possession.  This was a significant turn in the case and caused a great deal of work for undersigned counsel.
>
> Through a great deal of research and discovery, undersigned counsel was able to convince the Government to dismiss Count III of the Superseding Indictment.  *Again, Mr. Scott made it clear to the Government that he was going to proceed with trial.*

(Doc. 75 at 2-3.)  Furthermore, defense counsel made it crystal clear that it was not his advice to his client that was driving the decision to go to trial: "This was a very difficult case.  Mr. Scott was a very difficult client *who wanted his case taken to*

11

*trial no matter what.*"  (Doc. 75 at 3.)  In fact, defense counsel's time sheets,
submitted to substantiate his claim for reimbursement, explicitly represent that one
year earlier, upon first meeting his new client on August 3, 2006, defense counsel
had a "discussion with client regarding discovery *and the fact that he intends to go
to trial*."  Ex. A to Mem. In Support of *Ex Parte* Motion to Declare Case Extended
or Complex (Doc. 75).  Defense counsel also asserted that "[i]n light of Mr.
Scott's demands, undersigned counsel put in the work necessary to give Mr. Scott
a reasonable opportunity to convince his jury that he should be found not guilty."
(Doc. 75 at 3.)

These prior statements of defense counsel contradicting Defendant's current
version of his representational history are buttressed by one additional, significant
fact, and that is the fact that the government did not offer Defendant a plea
bargain.  Failure to offer a plea bargain is unusual–except when a defendant
announces early and often that he intends to take the case to trial.  Such appears to
have been the circumstances of this case.

The Court granted counsel's *ex parte* motion to declare that the case was

12

extended because the undersigned knew that defense counsel had worked hard for Defendant Scott, the Court having observed defense counsel's motions work and courtroom work.  The Court also knew that defense counsel did in fact have a difficult client who had unreasonable expectations in light of what defense counsel describes, euphemistically, as 'very difficult facts.'  (Doc. 75 at 3.)  Defendant Scott had not much of a defense available to him  but insisted on taking his case to trial anyway, and the Court so finds.  Defendant's argument that his attorney is to be blamed for the decision to go to trial is simply frivolous.

Ground Two:         "Bartering Gun Not a Use of a Weapon As a Matter of Law."

Defendant has further amended his § 2255 Motion to add Ground Two, which asserts that, under *United States v. Phelps*, 877 F.2d 28, 29-31 (9th Cir. 1989), Count I should be dismissed as a matter of law because bartering a gun for controlled substances is not a "use" of a weapon within the meaning of 18 U.S.C. § 924(c)(1)(A).  This ground is unavailing, however, because *Phelps* was abrogated by *Smith v. United States*, 508 U.S. 223 (1993), which holds that "using a firearm in a guns-for-drugs trade may constitute 'using a firearm' within the

meaning of § 924(c)(1)." *Id.* at 237.  The Supreme Court found that "the phrase

'uses . . . a firearm' is broad enough in ordinary usage to cover use of a firearm as

an item of barter or commerce...." *Id.* at 236-37.  Defendant states that he, in

agreement with Justice Scalia's dissent, would overrule *Smith*.  However,

Defendant's argument does not overcome *Smith*, but merely criticizes it.

Defendant's citation to *Watson v. United States*, 552 U.S. 74 (2007), is also

unavailing because that case merely holds that the reverse type of transaction--

bartering drugs for the purchase of a firearm--is not a use of a firearm during and

in relation to a drug trafficking crime within the meaning of section 924(c).

*Watson* does not apply to the facts of this case.  Defendant therefore fails to

persuade the Court that his § 2255 Motion should be granted as to Ground Two.

**MOTION TO MODIFY OR**
**CORRECT PRESENTENCE REPORT:**

Following the filing of the section 2255 motion, Defendant Scott also filed a

"Motion to Modify or Correct PreSentence Report."  (Doc. 95.)  Defendant states

that there are inaccuracies in his PSR in that certain previous charges are listed in

14

the criminal history section of his Presentence Report despite the charges having been dismissed and/or expunged from his record.  Defendant Scott explains that "the B.O.P. is using against him [some] inaccurate information."  (Doc. 95 at 1.) Apparently Defendant is dissatisfied with his security classification within the Bureau of Prisons, although Defendant does not provide details as to the exact nature of his dispute with the BOP.

However, arrests that result in the dismissal of charges are routinely recorded in all presentence reports as a matter of presenting a complete history of contacts with law enforcement.  The Court notes that Defendant Scott is not concerned about the impact of the dismissed charges upon the outcome of *this* case, but upon the outcome of his security classification within the Bureau of Prisons.  Defendant Scott does not fully explain what his disagreement is with the BOP, but, in point of fact, the entire matter is irrelevant to this case.

Defendant Scott may have a right of administrative appeal as to his security classification within the Bureau of Prisons and perhaps even a right to judicial review, but this is not the proper case within which to obtain that judicial review.

Defendant Scott's request for redaction of his criminal history in his Presentence Report is clearly inappropriate and must be denied.

**CONCLUSION:**

Thus, having considered the Defendant's Motion, the government's Answer, the Court file, and all the record of this case, the Court concludes that the Defendant is not entitled to relief.  Accordingly,

IT IS HEREBY ORDERED that Defendant's Motion Pursuant to 28 U.S.C. § 2255 (Document 85) is DENIED.  All other pending motions are DENIED: Motion Requesting Sentencing Transcript (No. 86), Motion to Modify or Correct Presentence Report (No. 95), and Application to Proceed In Forma Pauperis (No. 96) for mootness.   Let judgment enter.

Finding that the Defendant has failed to make a substantial showing of the denial of a constitutional right and that no jurist of reason would debate the correctness of denying Defendant collateral relief,

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

The Clerk is directed forthwith to notify the Defendant and counsel for the government of entry of this order.

Done and dated this 19th day of October, 2010.


_____
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE